George SZWALKIEWICZ, Plaintiff-Respondent,

v.

GORSKI TOOL & MANUFACTURING CORPORATION,
Defendant-Appellant-Petitioner,

LIBERTY MUTUAL INSURANCE COMPANY, Rousselle Corpo-
tion, and Nicholas Koceja, Personal Representative
of the Estate of Ralph Koceja, Deceased, Defend-
ants-Co-Appellants-Petitioners,

F.W. BURNS MACHINERY COMPANY, Defendant-
Intervenor.

Supreme Court

*No. 79-1690.*

(See, *supra*, p. 748.)

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I
would not dismiss the petition to review as having been
improvidently granted. The court should decide the is-
sues raised in this case.

Further, as I wrote in *City of Racine v. Schwartz*, 95
Wis. 2d 745, 293 N.W.2d 925 (1980), when the court grants
the petition to review and the parties file briefs and
argue the case, I believe that if the court at this late
stage of the appellate proceeding dismisses the petition
to review as having been improvidently granted, the
court should set forth the reason for the dismissal.

COFFEY, J. (*dissenting*). I dissent from the ma-
jority's summary disposition of this case because I am
convinced that the numerous errors raised by the de-
fendants on appeal resulted in a jury verdict which,
under any reasonable view, is not supported by credible

755

evidence. For this reason, I would reverse the decision of the court of appeals and remand the case for a new trial.

George Szwalkiewicz (Szwalkiewicz), the plaintiff-respondent, brought this action to recover for injuries he received when his hand was crushed in a punch press. The defendants in the action include the Gorski Tool and Manufacturing Corporation, the owner of the punch press; Ralph Koceja, the plaintiff's co-worker, and the Rousselle Manufacturing Company, the manufacturer of the punch press.

The punch press involved in this case was equipped with two palm buttons and only engaged when both buttons are simultaneously depressed. This was a safety mechanism designed to prevent a person from engaging the machine with one hand while the other was under the ram. The press also had a sign mounted on it which warned persons to keep hands and arms away from the die and a pair of tongs were furnished to remove pieces from the press.

At the time of the injury, Szwalkiewicz had over twenty-five years of experience as a tool and die maker and was responsible for the training of the tool and die workers at Broan Manufacturing Company, his employer, in addition to being in charge of the tool and die room at Broan. On March 28, 1972, the day of the injury, Szwalkiewicz and Koceja traveled to Gorski's machine shop to check out a problem with a punch-press die. Both Szwalkiewicz and Koceja were experienced tool and die makers. After arriving at Gorski's and inspecting and running the machine, Szwalkiewicz and Koceja found that the problem with the punch press was that the die was mounted incorrectly. They remounted the die and decided to run some pieces on the press to demonstrate to Gorski that the problem was corrected. While doing so, Szwalkiewicz placed his hands

under the punch-press die to remove a processed piece. In doing so, he ignored a pair of tongs which were furnished explicitly to remove pieces from under the ram. While Szwalkiewicz had his hands under the die, the press engaged and Szwalkiewicz, while trying to remove his hands from under the ram, struck Koceja, who was standing next to him, with his right arm. As a result of his arm knocking Koceja, Szwalkiewicz was unable to remove his right hand and it was caught under and crushed by the ram. Szwalkiewicz acknowledged at trial that he and Koceja were each controlling one of the buttons at the time of the accident in order to speed up the process, and defeat the safety feature of the two-button press.

At trial, Robert Schoof was called as an expert for the plaintiff. Schoof testified that the accident which caused George Szwalkiewicz' injuries was not caused by a machine malfunction or improper maintenance. Rather, he testified that he was of the opinion that the press was defective in three respects. The first defect was that the machine should have been equipped with two sets of palm buttons because it was foreseeable that the press would be operated by more than one person. It seems equally foreseeable that the press could have been operated by three or more persons and the additional palm buttons could, thus, be bypassed. If the extra palm buttons were present, the press could only engage when all four buttons were depressed.

The second defect in Schoof's opinion was that the press should have a long-hold feature with a cam whereby continuous depression of the palm buttons would be required until the press had descended to the point where it was no longer possible to place hands under the press' ram. Evidence presented at trial established that the press did have a long-hold feature, but did not have a cam mechanism. Schoof testified that the absence of a

cam alone made the machine defective as without it the employee would be required to keep the palm buttons depressed during the entire press cycle and, therefore, become fatigued and in a short while he would disconnect the long-hold feature. All the evidence presented at trial established that the long-hold feature on the press in question was connected and in good working order prior to and the day after the injury. There was *no* evidence that the long-hold feature was disconnected at the time the plaintiff used the machine.

The final defect alleged by the expert was the absence of a sign warning that the press was to be operated by only one person. At trial, however, the plaintiff testified that he knew that the press involved in this case was to be operated by one man only, based upon his thirty or more years of experience in the business. The plaintiff was a member of a safety committee at the Broan Manufacturing Company and was well aware of and taught new employees of the dangers and hazards of presses and instructed apprentices that where there are two palm buttons, the press should be operated only by one man.

The jury found the press to be defective, although the special verdict did not require or specify in what respect the machine was defective. They also found the plaintiff, his co-worker, and the owner of the press negligent. The apportionment of fault was as follows: the product, 28%, the owner 39%, the co-worker 18% and the plaintiff 15%. The trial court entered judgment on the verdict and the court of appeals affirmed this judgment.

The preceding statement of facts is necessitated by the lack of a majority opinion in this case. Although this factual summary does not begin to enumerate all the circumstances relevant to the various instances of error alleged by the defendants, it is sufficient to dem-

onstrate that the jury's verdict is unsupportable under the facts surrounding the injury.

I find it wholly incredible that the jury found Koceja, the co-worker who was merely standing next to him, more negligent than the plaintiff. Although both men, knowledgeable and experienced in operating presses, were operating the press so as to bypass the two-button safety mechanism, it was Szwalkiewicz, the plaintiff, who ignored the warning sign and wilfully placed his hands under the ram. In addition, it was Szwalkiewicz who declined the use of the tongs which were available at the press to allow any person to remove pieces from under the die without having to use their hands. When one considers these facts, coupled with the realization that Szwalkiewicz was a *journeyman* tool and die maker with over twenty-five years of experience and was responsible for training Broan employees regarding safety, I believe it is beyond doubt that a greater portion of the negligence should have been apportioned to the plaintiff than Koceja, his co-worker, and it is wholly incredible that the jury did otherwise.

I believe that prejudicial error was committed when the trial court refused to strike the testimony of the plaintiff's expert witness pertaining to the lack of a long-hold feature. On this issue, Schoof testified that the press was defective in his opinion in that either there was no long-hold feature incorporated in the machinery *or* that the long-hold feature was disconnected because of the absence of a cam feature which in itself constituted a defect. The evidence presented at trial established, however, that the press involved had a long-hold feature and that both prior to the accident and when inspected shortly afterwards, the mechanism was properly connected. There is no evidence in the record that the long-hold feature was ever disconnected. It is a well-established rule that "conditions once proved to

exist are presumed to continue in the absence of evidence to the contrary." *Bruss v. Milwaukee Sporting Goods Co.,* 34 Wis. 2d 688, 695, 150 N.W.2d 337 (1967). Since the plaintiff produced no evidence even putting the absence of the long-hold feature or the disconnection of it in issue, the presumption that the long-hold feature existed and was connected remained undisputed. Thus, it was improper and prejudicial error for the court not to strike the testimony of the expert as under the rules of evidence governing experts, expert testimony is limited to specialized knowledge which assists the trier of fact to understand the evidence or *determine a fact in issue.* (Sec. 907.02, Stats.)

The prejudicial nature of this error is compounded by the fact that the trial judge failed to draft proper jury instructions, and specific verdict questions as to defect such that there is no indication in the record as to the basis of the jury's determination that the press was defective. If the nonfunctioning of the long-hold feature was the basis of the jury's finding the product defective, such finding would clearly be improper under the evidence presented in this case and the verdict would have to be set aside.

I further believe that the jury's finding that the defective press was causal of the plaintiff's injuries is not sustainable based on any of the alleged defects of the press. The first alleged defect was the lack of or disconnection of the long-hold mechanism. If this was the defect found by the jury, it is clear that it could not have been causal of the plaintiff's injury because the plaintiff, by his own testimony, acknowledged that he and Koceja, the co-employee, operated the press in such a manner so as to intentionally defeat and bypass this safety device and disregarded the warning sign in plain view.

The plaintiff's expert also alleged that the machine was defective because it did not have a sign warning

that the machine was only to be operated by one person or because it did not have an additional set of control buttons for those occasions in which it was being used by two persons. These alleged defects could not have been causal of the plaintiff's injuries, however, because the plaintiff's testimony established that he knew the machine was only to be operated by one person and yet he ignored this fact, along with the other safety devices, including the two palm button control, warning sign and tongs which were available when he operated the press in the manner which caused his injuries.

It is clear from the record in this case that the only basis for the jury's finding of negligence on the part of Gorski Tool and Manufacturing Corporation was an alleged violation of the safe place statute in maintaining the press in its factory in a defective condition. Thus, the unsupportability of the jury's finding of a causal defect in the press involved in this case affects both the finding of liability on the part of the manufacturer, Rousselle Corporation, and the finding of causal negligence on the part of Gorski Tool and Manufacturing Corporation and requires a reversal of the verdict as to both.

In addition to the errors previously discussed, I am also convinced that the jury's allocation of a greater portion of the fault to the product than to the plaintiff who had twenty-five years of experience with presses is unsupported by any credible evidence. The machine in question was equipped with a two-button safety mechanism which prevented an operator from placing his hand under the punch-press ram when operated properly. This mechanism would have prevented the plaintiff's injuries if he had not enlisted the aid of another to depress one of the buttons in order to bypass this safety mechanism. Even if one were to question the sufficiency of the safety mechanism alone, it is clear that in addition to the mechanism a sign was mounted

on the press which expressly warned the plaintiff of the dangers of placing his hands under the die. Under these facts, it is beyond reason that a jury would assess a greater portion of the fault for the injury to the manufacturer while knowing that the plaintiff bypassed the safety mechanism, ignored the warning and declined to use the tongs. I am convinced that the jury would not have made this allocation had there been proper rulings, proper instructions and more specific special verdict questions.

The plaintiff's arguments that the machine should have expressly warned against the use of the machine by two persons, or should have been designed for use by two persons, is incredulous and takes the obligation of designing safe machinery to the point of absurdity. This is especially true where, as in this situation, the plaintiff was admittedly aware that this machine was designed for operation by one person. Had there been two sets of palm buttons, this safety measure could still have been bypassed by enlisting the aid of a third person and, undoubtedly, the plaintiff would contend that then even another set of controls was required.

The result of the majority's decision in this case is to impose the cost of additional, unduly expensive and unnecessary safety devices on the Wisconsin manufacturers. The addition of another set of control buttons would not make the press any safer because under the plaintiff's theory of defect, the press would be unsafe if three persons operated it. Requiring two sets of control buttons on a punch press, like the one involved in this case, adds to the cost of the machine itself and the cost of labor as a second person would have to be involved in the operation of the machine. The increased labor costs raise the price of the product to consumers as well as the increased costs of the production machinery. The cost of these mechanisms is

not only borne by each of us as consumers, but it also restricts the ability of Wisconsin manufacturers to compete in the marketplace.

The examples set out in this dissent do not begin to exhaust the instances in the record which support my conclusion that the verdict in this case is not supportable by any credible evidence, yet, they are sufficient to demonstrate that a new trial is merited in this case. The failure of the majority to analyze the merits of this case and detail their reasoning does not do justice to the valid and justified arguments of the defendants on appeal.

This court has held that the test to be applied where a new trial in the interest of justice has been requested is whether a new trial would probably produce a different result. *Schultz v. State*, 87 Wis. 2d 167, 174, 274 N.W.2d 614, 617 (1979). For the reasons set out above and the errors raised by the defendants on appeal, I am convinced that a new trial in this case would produce a different result.

Accordingly, I would reverse the court of appeals and remand this case for a new trial on the merits.